IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MONTE HANEY,                                    No. 2:10-CV-3319-JAM-CMK-P

        Plaintiff,

  vs.                                          FINDINGS AND RECOMMENDATIONS

BAKER,

        Defendant.

_____/

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's motion for summary judgment (Doc. 44).

**I. BACKGROUND**

**A.    Plaintiff's Allegations**

        Plaintiff claims that defendant Baker "forced me to move in a cell with inmate Latimore and afterwards be assaulted by him on 8-17-09." According to plaintiff, the day before the assault on August 17, 2009, plaintiff had been called to the program office where he was told by Baker that he would be moved to a cell with inmate Latimore. Baker refused plaintiff's

request to be moved to a cell with a "friend that would be compatible. . . ." Plaintiff claims that, prior to the cell move, other inmates had warned him not to bunk with Latimore "because he was in the institution's mental health program and engaged in numerous cell fights with several of his previous cellmates."

Plaintiff asserts that, immediately after moving in with Latimore on August 16th, plaintiff "noticed that Latimore was acting very weird by talking very loud and stating at me for long period of time without saying anything." Plaintiff feared that Latimore would be unpredictable. According to plaintiff, Latimore was aggressive, telling him in a veiled threat that he had better have the lights off by 10:00 p.m. The next morning, plaintiff asked Latimore "calmly and respectfully" if he would move his feet away from plaintiff's face while he (Latimore) was on the top bunk. In response, Latimore became belligerent and kicked plaintiff in the face. Latimore then grabbed plaintiff and "bit a chunk of flesh out of my hand like a cannibal."

Regarding Baker's knowledge of the potential danger posed by Latimore, plaintiff asserts that "Defendant Baker clearly knew that inmate Latimore was a mentally ill inmate who previously assaulted his prior cellmates. . . ." According to plaintiff, defendant Baker knew prior to the assault that Latimore was enrolled in the prison's mental health program. He adds that, given Latimore's mental illness, Baker must have realized that there would be a "strong possibility" of injury to any inmate ordered to share a cell with Latimore. Plaintiff claims that defendant Baker is liable for his injuries, arguing that "[i]f plaintiff had not been forced to move in the cell with inmate Latimore by Defendant J. Baker on 8-16-09, plaintiff would never had been assaulted by inmate Latimore on 8-17-09."

/ / /

/ / /

/ / /

/ / /

**B. The Parties' Evidence**

1. Defendant

Based on defendant's declaration, as well as plaintiff's deposition testimony, defendant contends that the following facts are undisputed:

    a. In August 2009 plaintiff was an inmate housed at California State Prison – Sacramento in B Facility, part of the general population yard, and the highest custody level at the prison.

    b. In August 2009 defendant was a correctional sergeant assigned to B Facility.

    c. Plaintiff and his cellmate, Latimore, were involved in an in-cell fight on August 17, 2009.

    d. Plaintiff believes that Latimore was mentally ill.

    e. The Correctional Clinical Case Management System ("CCCMS") is the lowest level of mental health classification in the California prison system and CCCMS inmates are housed in the general population.

    f. Inmates at higher levels of mental health classification are not housed in the general population.

    g. CCCMS inmates are not precluded from being housed with other inmates.

    h. Defendant was not present when the fight occurred on August 17, 2009, and was only responsible for assigning plaintiff to share a cell with Latimore.

    I. Prior to assigning Latimore to be housed with plaintiff, defendant spoke to both inmates and both inmates agreed to be housed together.

    j. Plaintiff learned after the fight on August 17, 2009, that Latimore had been involved in prior in-cell fights.

    k. Plaintiff himself had been involved in two prior in-cell fights.

///
///
///
///

2. <u>Plaintiff</u>

With his opposition to defendant's motion, plaintiff has submitted the following:

    a. Inmate Appeal Form, dates June 1, 2009, filed by inmate Blunt complaining that he was not compatible to cell with inmate Latimore.

    b. The declaration of inmate Bernard L. Smith, dated September 17, 2011, in which inmate Smith states:

> On June 11th, 2011, while being transported to UC DAVIS Medical Center for my Cancer Treatment, SGT. Baker informed me that he was moved from the B FACILITY due to lawsuits inmates have against him for unconstitutional job performance, mainly "Safety and Security" of inmates.

Inmate Smith adds that "Baker has a reputation fo placing inmates in cells with other inmates that he knows will be harmed or hurt."

    c. A Cell Move Slip, dated August 16, 2009, submitted by inmate DeMura Henderson. No details are provided on the slip.

    d. A document from plaintiff's medical file reflecting injuries sustained on August 17, 2009.

Additionally, plaintiff offers his own declaration, dated September 25, 2013, in which he states that defendant ordered him to move into the same cell with inmate Latimore, that he informed defendant that he had already "made arrangements" to be celled with inmate DeMura Henderson, and that defendant continued to "demand" that plaintiff cell with Latimore. Plaintiff states that Latimore had assaulted his previous cellmate, Blunt, and that inmate Blunt had informed defendant of this assault by Latimore prior to ordering plaintiff to cell with Latimore. Specifically, plaintiff states that inmate Blunt "gave Defendant J. Baker a grievance requesting a cell move because of Latimore's weird behavior."

Finally, plaintiff admits to all of defendant's statements of undisputed facts except as to the following points:

    a. Defendant states that it is undisputed that plaintiff and inmate Latimore were involved in an in-cell fight on August 17, 2009. Plaintiff states that inmate Latimore assaulted him. In support, plaintiff offers the excerpts from his medical file showing injuries sustained on August 17, 2009.

4

        b.        Defendant states that, before ordering plaintiff to be housed with Latimore, he spoke with both inmates who agreed to the move. Plaintiff denies that he ever agreed to be housed with Latimore and states that he had planned to move to share a cell with inmate DeMura Henderson. In support, plaintiff offers the August 16, 2009, Cell Move Slip.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

/ / /

/ / /

## III. DISCUSSION

Plaintiff's case is based on a theory that defendant failed to protect him. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more

than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

In his motion for summary judgment, defendant argues that plaintiff can prove neither the objective nor subjective components of his claim. As to the objective component, defendant argues:

> . . .Latimore's mental health history was not necessarily an indicator for in-cell violence and would not keep him from being double-celled, nor would any prior in-cell violence issue preclude placement, as Haney himself had two instances of cell fighting in his past and Level IV inmates are the most dangerous inmates in the prison. This is not a substantial risk of serious harm and Haney's claim fails on the objective component.

As to the subjective component, defendant argues:

> . . . Baker spoke with both inmates, Haney and Latimore, and both agreed to be housed together, so Baker approved the cell move. (DUF 15). In Baker's experience, when both inmates agreed to the placement, housing two inmates of the same race together was not a substantial risk. (DUF 16). Thus, Baker did not know of or disregard an excessive risk to Haney's safety. . . .

The court agrees with defendant that plaintiff cannot prove the objective component of his claim. There is no evidence to support plaintiff's underlying factual contention that inmate Latimore was mentally ill and that this created the substantial risk of serious injury should plaintiff be housed with him. While plaintiff states that he believes Latimore was mentally ill, he has presented no evidence establishing this fact. Moreover, even assuming Latimore was mentally ill, the undisputed evidence shows that, because Latimore was being housed in the general population, he could not have been at any higher a level of care than the CCCMS level – the lowest level of mental health care in the prison system. This fact also indicates that any risk posed by Latimore was not substantial. Because plaintiff cannot prove the subjective component, his claim necessarily fails.

8

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's motion for summary judgment (Doc. 44) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 5, 2014

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE